UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TRENWICK AMERICA REINSURANCE CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA,<br>    Plaintiffs,<br><br>v.<br><br>IRC, INC. (individually and as successor by merger of IRC, INC. and OCCUPATIONAL HEALTH UNDERWRITERS, INC.), IRC RE LIMITED (individually and as successor by merger of IRC RE, LIMITED and MANAGED COMPENSATION INSURANCE CO. LTD.), and MALCOLM C. SWASEY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Action No. 07cv12160-NG |

GERTNER, D.J.:

MEMORANDUM AND OPINION RE: DEFENDANTS'
OBJECTIONS TO THE PROPOSED JUDGMENT AND ATTORNEYS' FEES
May 23, 2011

The defendants, IRC, Inc. (individually and as successor by merger of IRC, Inc. and Occupational Health Underwriters, Inc.), IRC Re, Limited (individually and as successor by merger of IRC Re Limited and Managed Compensation Insurance Co. Ltd.) and Malcolm C. Swasey (collectively "Defendants") mount several challenges to the proposed judgment submitted by the Plaintiffs on February 23, 2011: that the proposed judgment does not comply with Rule 54(b) of the Fed. R. Civ. P., that it improperly seeks to double the prejudgment award and interest, and that it reflects unsupported and excessive attorneys' fees and costs. I shall deal with each in turn.

I.     **RULE 54(b)**

I agree with the plaintiffs that defendants' Rule 54(b) argument is misplaced. Rule 54(b) does not apply because the proposed judgment, which was supposed to reflect the terms of the

the February 16, 2011 Memorandum and Order (document #151), which disposes of all claims of the parties, subject only to the attorneys' fees application. Rule 54(b) addresses judgments that resolve some, but not all, claims. In any case, out of an abundance of caution, I have included in the final judgments reference to the counts that were resolved explicitly in that memorandum; other counts are dismissed.

## II. CHAPTER 93 DAMAGES

I agree with the defendants, however, with respect to their claim that the judgment as calculated is not consistent with Mass. Gen. Laws ch. 93A, § 2. Prejudgment interest awarded to the prevailing party in a chapter 93A action may only be applied to the actual damages suffered, not to the multiple punitive damage award.

Likewise, the multiple damage award cannot be computed based on the actual damages plus interest. Mass. Gen. Laws ch. 93A, § 11 states that "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of [Mass. Gen. Laws ch. 93A, § 2]." The statute notes further that "the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim." Mass. Gen. Laws ch. 93A § 11.

The Supreme Judicial Court has indicated that prejudgment interest may only accrue on the nonpunitive portion of the damages, the amount computed without doubling or trebling. See City Coal Co. Of Springfield, Inc. v. Noonan, 434 Mass. 709, 715-16 (2001); McEvoy Travel

Bureau, Inc. v. Norton Co., 408 Mass. 704, 716-17 (1990). In McEvoy, the court found that while the purpose of prejudgment interest under § 6B is to compensate the damaged party for the loss of use or unlawful detention of money, the multiple damages provision of chapter 93A is punitive in nature, designed to impose a penalty that varies with the culpability of the defendant. McEvoy, 408 Mass. at 717. Therefore, including prejudgment interest in the actual damage amount to be multiplied (which is what this Court did in its proposed judgment), or computing it on the basis of the double damages (as the SJC refused to do in McEvoy), would violate the compensatory purpose of § 6B. Id. The purpose of prejudgment interest under § 6B is not to "penalize the wrongdoer" or "to make the damaged party more than whole." Id.

Plaintiffs were awarded prejudgment interest in the instant case pursuant to Mass. Gen. Laws. ch. 231, § 6C, which allows for prejudgment interest to be added to the amount of damages awarded in contract actions. The purpose of § 6C, however, is the same as that of § 6B: to compensate a damaged party for the loss of use or unlawful detention of money. DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 771 (2007) (citing Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988)). Therefore, basing the prejudgment interest on the punitive damages award or computing chapter 93A's double damages using the damage award *plus* interest would similarly violate the purpose of § 6C. The computations are separate -- interest on actual damages under § 6C and the doubling of actual damages under chapter 93A.

## III.    ATTORNEYS' FEES

Defendants also challenge the plaintiffs' attorneys' fees application for failure to structure the claim using the "lodestar" approach.[1]  The standard for evaluating attorneys' fees under chapter 93A, they insist, is identical to the standard under federal civil rights claims.  Specifically, they argue that defendants failed to provide sufficiently detailed time records to enable the court to determine the qualifications of certain individuals, time spent on various activities, and time spent on plaintiffs' section 93A claim as distinguished from time spent on other unsuccessful claims.  Defendants also claim that plaintiffs' request for attorneys fees is excessive because, in essence, they were overstaffed.

Defendants correctly assert that the First Circuit and the district courts within it have followed the lodestar method to determine reasonable attorney's fees in civil rights cases.  See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331 (1st Cir. 2008); Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992); Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984); Tri-City Cmty. Action Program v. City of Malden, 680 F. Supp. 2d 306 (D. Mass. 2010).  See also Blum v. Stenson, 465 U.S. 886 (1984).  But that approach is not necessarily applicable to attorney's fees awarded pursuant to chapter 93A.  See Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp., 849 F. Supp. 820, 826 (D. Mass. 1994); Morse v. Mut. Fed. Sav. & Loan Ass'n, 536 F. Supp. 1271, 1283-84 (D. Mass. 1982); Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 430 (2005); and Linthicum v. Archambault, 379 Mass. 381, 388 (1979).  In the

---

[1] In my memorandum of February 16, 2011, I found that since defendants' acts were wilful and knowing, plaintiffs were entitled to attorneys fees and expenses in an amount to be determined by the court.  Mem. & Order, at 56.

chapter 93A cases that defendants cited, for example, the lodestar method was not applied to attorney's fees awarded pursuant to that statute.

The First Circuit has stated that reasonable attorney's fees under Chapter 93A are to be determined by what the services were objectively worth using the less structured, more flexible approach of <u>Linthicum</u>, 379 Mass. at 388. <u>See also</u> <u>Computer Sys. Eng'g, Inc. v. Qantel Corp.</u>, 740 F.2d 59, 71 (1st Cir. 1984). The court recognized that under Massachusetts law, the determination of reasonable attorney's fees awarded under 93A is largely discretionary, taking into account the following relevant factors: "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." <u>Id.</u>, 740 F.2d at 71 (quoting <u>Linthicum</u>, 379 Mass. at 388-89). <u>See also</u> <u>Incase, Inc. v. Timex Corp.</u>, 421 F. Supp. 2d 226, 242-43 (D. Mass. 2006); <u>Indus. Gen. Corp.</u>, 849 F. Supp. at 826. No one factor is determinative and while a factor-by factor analysis is helpful, it is not required. <u>Incase, Inc.</u>, 421 F. Supp. 2d at 243.

This <u>Linthicum</u> factor approach, was reaffirmed by the Supreme Judicial Court in <u>Twin Fires, Inv., LLC v. Morgan Stanley Dean Witter & Co.</u>, 445 Mass. 411 (2005). To be sure, while the <u>Linthicum</u> approach is less structured, it is not without limits. For example, in <u>Twin Fires</u>, the SJC chided the plaintiffs for falling short of their obligation to submit sufficient documentation to enable the judge to "evaluate the hours spent on particular aspects of the case or the precise nature of the work." 445 Mass. at 428. Nevertheless, the Court awarded the

amount sought by the plaintiff because the defendant's opposition was stated in conclusory terms.  Id. at 429-32.

Some cases, including at least one from the Massachusetts Appeals Court have found that fees under chapter 93A are to be determined by the more formal lodestar method.  Ross v. Cont'l res. Inc., 73 Mass. App. Ct. 497, 515 (2009).  The SJC, however, has not required that approach. In any case it is not necessary to formally impose it here.  The fact is that while the plaintiffs have not specifically shoehorned their data into the lodestar categories, they have offered sufficient information to make a decision on attorneys' fees by either standard.

Defendants claim: (a) that the Court should determine which hours were performed in connection with the chapter 93A claims and which were not, not permitting fees for the latter; (b) that the Court cannot do so in connection with certain "block entries" which elide the activities in the chapter 93A claim with other activities, and thus, should exclude those entries from consideration; and (c) specifically, that the fees incurred in Bermuda by plaintiffs' Bermuda counsel, Cox  Hallett Wilkinson, ($54,896.42 and additional costs of $80,832.96) should be disallowed because they were incurred in connection with the Plaintiffs' unsuccessful efforts to pierce the corporate veil of IRC Re.

While an award of attorney's fees under chapter 93A should generally include only those fees that were incurred in connection with the chapter 93A portion of the case, if the facts underlying other claims were essentially the same as those underlying the 93A claim then it may not be feasible to apportion the attorney's fees between the claims.  Incase, Inc., 421 F. Supp. 2d at 244.  See also Morse, 536 F. Supp. at 1283 (stating that "where some particular matter gave rise to common law as well as chapter 93A liability, this should result in no apportionment or

reduction of charges").  In this case, it is not at all feasible to apportion the attorney's fees between the claims.  The claims involved a single set of facts, a common narrative, if you will.  The pleading was in the alternative: e.g., that there was a contract between the plaintiffs and IRC Re, or, if there were no contract, that Swasey and IRC, Inc. misrepresented the existence of one.  And the shell game that I found in connection with the chapter 93A claims -- discovery abuses and shifting positions, outrageous conduct pre-, post- and during litigation, particularly concerning which of Swasey's entities were responsible for which actions -- more than justified counsel's efforts to pierce the corporate veil of IRC Re.  As such, it was not feasible for the lawyers to disentangle the costs attributable to the losing common law claims, any more than the winning contract and chapter 93A ones.

With respect to the qualifications of the lawyers listed in the fee application, while it is true that only trial counsel's qualifications were specifically outlined, the hourly rate for all of the lawyers, including associates was reasonable.  Nor do I conclude that the case was remotely "overlawyered."  Swasey's moving target defenses -- accepting that there was a contract, rejecting the contract, changing his story -- required precisely the type of effort that the plaintiffs expended.  Finally, on the general Linthicum factors -- "the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases" -- the fees and costs requested are surely reasonable.  The case was extraordinarily complex, made so by defense tactics, "turning what should have been a routine claim against a reinsurer into a tortuous marathon." (Mem. & Order, at 5).  The records from Budd Larner P.C. dated from October 18,

2006, are detailed and comprehensive, as are the records from Cetrulo and Capone. The hourly rates are appropriate, indeed even modest, for work of this scope and complexity. The amount of damages obtained is substantial; the fees are proportional to it. I award TWO MILLION, SIX HUNDRED SIXTY-ONE THOUSAND, THIRTEEN AND 83/100 ($2,661,013.83) DOLLARS in fees and costs. Two Million, Thirty-One Thousand, Three Hundred Twenty-Two And 00/100 ($2,031,322.00) Dollars in fees and One Hundred Seventy-Five Thousand, Five Hundred Eighty-Two And 47/100 ($175,582.47) Dollars in costs to Budd Larner, PC; One Hundred Seventy-One Thousand, Five Hundred Thirty-Seven And 00/100 ($171,537.00) Dollars in fees and Ten Thousand, Two Hundred Thirty-Three And 15/100 ($10,233.15) Dollars in expenses from local counsel Cetrulo and Capone.

**SO ORDERED.**

**Date: May 23, 2011**           /s/ *Nancy Gertner*
                                 **NANCY GERTNER, U.S.D.J.**